United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIL GOYAL, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CSX INTERMODAL TERMINALS, INC.,<br><br>　　　　　Defendant. | Case No. 17-cv-06081-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Docket No. 110 |

## I.　　INTRODUCTION

Plaintiffs in this case are 53 individuals who worked as truck drivers for Defendant CSX Intermodal Terminals, Inc. ("CSXIT"). Plaintiffs have not filed a class action but rather bring individual claims for violations of the California Labor Code, including failure to reimburse for business expenses. The gist of Plaintiffs' complaint is that CSXIT improperly classified them as independent contractors instead of employees. This resulted in CSXIT improperly denying Plaintiffs reimbursements for business expenses, deducting pay to cover those expenses, and denying Plaintiffs meal breaks, rest breaks, and minimum wages, in violation of various provisions of the California Labor Code as well as the UCL. Currently pending before the Court is CSXIT's motion for judgment on the pleadings as to most of the Second Amended Complaint.[1] The motion is primarily based on preemption stemming from the Department of Transportation's Truth-in-Leasing Regulations ("TIL Regulations").

---

[1] Since CSXIT filed this motion, the parties have stipulated to the filing of a Third Amended Complaint. *See* Docket No. 117. The Court allowed the amendment, which added plaintiffs to the Second Amended Complaint and changed no substantive allegations. *See* Docket No. 118. The parties agreed that the Third Amended Complaint shall not affect this Court's disposition of the motion. *See* Docket No. 117. This order shall therefore apply to the Third Amended Complaint.

## II.     FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs worked as truck drivers under "Contractor Operating and Lease Agreements." The premise of the agreements was that Plaintiffs would own and operate vehicles that CSXIT would lease along with Plaintiffs' services. The lease agreements allocated a number of expenses to Plaintiffs, such as operating expenses and insurance. CSXIT therefore did not reimburse Plaintiffs for those expenses, and where it fronted the expenses, it deducted their cost from Plaintiffs' final settlements or a driver-funded escrow account maintained for that purpose. Plaintiffs' Second Amended Complaint alleges that because they were actually employees, the deductions and failure to reimburse were unlawful. Plaintiffs also bring claims for CSXIT's failure to supply them with meal breaks, rest breaks, and minimum wages.

*Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-cv-5433-EDL (N.D. Cal.), is a closely related case. *Valadez* was initially filed in 2015 as a class action with almost exactly the same claims as in this case. CSXIT also filed a preemption motion in that case. Judge Laporte granted the motion in part and denied it in part in April 2017. *See id.*, Docket No. 76, at 21 ("The FAAAA does not preempt Plaintiffs' claims," but "[t]he TIL Regulations preempt Plaintiffs' first and second claims (except for their claim involving reimbursement for cellular telephones), but not Plaintiffs' third, fourth, fifth, or sixth claims."). Apparently seeking to avoid this holding, Plaintiffs initiated the instant suit. The claims are essentially identical except that Plaintiffs bring the instant suit as an individual action and this suit drops the PAGA claim present in *Valadez*.

With the pleadings now complete, CSXIT brings a preemption motion for judgment on the pleadings based on the TIL Regulations, specifically 49 C.F.R. § 376.12. Section 376.12 requires lease agreements such as those at issue here to disclose whether the carrier or driver is responsible for a variety of expenses. They are discussed as needed below.

## III.     LEGAL STANDARD

Rule 12(c) provides, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "Because a Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion, 'the same standard of review' applies to motions brought under either rule.'" *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017)

(quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). Thus, judgment on the pleadings is proper when, "accepting all factual allegations in the complaint as true and drawing 'all reasonable inferences in favor of the nonmoving party,'" the moving party is entitled to judgment as a matter of law. *Id.* at 886-87 (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).

## IV. DISCUSSION

CSXIT's motion is primarily based on preemption of which there are three types: express, field, and conflict preemption. "There are two types of conflict preemption. Conflict preemption occurs where (1) it is impossible to comply with both federal and state law, or (2) where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016) (citations omitted) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Federal regulations have the same preemptive effect as federal statutes. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). "In conducting a preemption analysis, courts are guided by two bedrock principles: (1) the purpose of Congress, which is the 'ultimate touchstone in every pre-emption case,' and (2) 'the assumption that the historic police powers of the States were not to be superseded by the [f]ederal [a]ct unless that was the clear and manifest purpose of Congress.'" *Nation v. City of Glendale*, 804 F.3d 1292, 1297-98 (9th Cir. 2015) (alterations in original) (quoting *Wyeth v. Levine,* 555 U.S. 555, 565 (2009)). "[T]he establishment of labor standards falls within the traditional police power of the State." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 888 (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987). "Thus, 'preemption should not be lightly inferred in this area.'" *Id.* (quoting *Coyne*, 482 U.S. at 21).

A.  Claims 1: Preemption

CSXIT argues that Claim 1 (failure to reimburse business expenses in violation of Labor Code § 2802) is preempted by the TIL Regulations except as to claims regarding cellphone expenses. Claim 1 concerns seven categories of expenses: (1) cargo and equipment loss and damage, (2) escrow costs, (3) insurance, (4) fuel, maintenance, and operating costs, (5) purchase or lease of vehicles, (6) vehicle replacement, and (7) cellphone expenses. Docket No. 78 ("SAC")

3

¶ 92. CSXIT seeks dismissal only as to the first six categories.

CSXIT argues federal regulations preempt state laws where the regulations "affirmatively permit what the underlying state laws purport to prohibit." Docket No. 110 ("Mot.") at 6. In CSXIT's view, the TIL Regulations "affirmatively authorize" the CSXIT and the drivers to allocate the disputed expenses by contract; contrary state labor laws allocating expenses to employers are therefore preempted. Mot. at 7.

For example, CSXIT argues that claims based on the first category of expenses (cargo and equipment loss and damage) are preempted by § 376.12(j)(3) of the TIL Regulations. That subsection provides that "[t]he lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements." 49 C.F.R. § 376.12(j)(3). Plaintiffs contend that the California Labor Code bars imposition of such expenses on employees. In CSXIT's view, the federal regulation, contrary to the Labor Code, "affirmatively authorize[d]" CSXIT to make such deductions. Mot. at 7-8; *see also id.* at 12. Thus, according to CSXIT, the regulation preempts state laws prohibiting deductions for business expenses. CSXIT makes the same arguments regarding escrow costs,[2] insurance,[3] and fuel, maintenance, and operating costs – expenses Plaintiffs contend also must be borne by employers under the California Labor Code.[4]

CSXIT's argument fails. First, no text of the regulation expressly preempts state laws; indeed, nothing in the regulations (or governing federal statute) mentions preemption. *Compare* 49 C.F.R. § 376.12, *and* 49 U.S.C. § 14101, *et seq.*, *with, e.g.*, 8 U.S.C. § 1324a(h)(2) ("The provisions of this section preempt any State or local law . . . .").

There is no indication that Congress intended federal regulations to preempt the entire field. *Cf. Arizona v. United States*, 567 U.S. 387, 401 (2012) (holding that the federal government

---

[2] *See* 49 C.F.R. § 376.12(k) ("[T]he lease shall specify: (1) The amount of any escrow fund or performance bond required to be paid by the lessor. . . .").

[3] *See* 49 C.F.R. § 376.12(j)(1) ("[T]he lease shall specify the amount [paid into insurance connected to the operation of the leased equipment] which will be charged-back to the lessor.").

[4] *See* 49 C.F.R. § 376.12(e) ("[T]he lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries," etc.).

had occupied the field of alien registration by providing a "full set of standards" that create a "harmonious whole," so that even complementary state regulation was preempted). Significantly, 49 C.F.R. § 376.12(c)(4) acknowledges that the TIL Regulations are not intended to "affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee." Hence, at the very least, the TIL Regulations were not meant to preempt the protections afforded to employees, *e.g.*, the minimum wage. CSXIT argued at the motions hearing that the purpose of this provision was merely to signal to courts not to use the Regulations to impute tort liability onto carriers. *See* Lease and Interchange of Vehicles, 31 I.C.C.2d 92, 93 (1986); *Remington*, 2016 WL 4975194, at *5-*6; *Edward v. McElliotts Trucking, LLC*, 268 F. Supp. 3d 867, 878 (S.D.W. Va. 2017). However, there is no indication that the provision was intended to be restricted to tort law. In fact, its broad language suggests the contrary.

Conflict preemption does not apply. It is not impossible to comply with both California labor law and the TIL regulations. The TIL Regulations only require that the deductions and allocation of expenses be specified and disclosed in the lease; deductions and allocations can be made compliant with the California Labor Code and be specified in the lease as the TIL Regulations require.

Nor does obstacle preemption apply. The California Labor Code does not obstruct the purpose and objections of Congress or the TIL Regulations at issue. As recognized by *Valadez*, "the primary purpose of the TIL Regulations is to protect drivers by ensuring full disclosure in leases." 2017 WL 1416883, at *8; *see* Lease and Interchange of Vehicles, 129 M.C.C. 700, 700 (I.C.C. 1978) (stating the I.C.C.'s purposes in issuing the TIL Regulations). In *Owner-Operator Independent Drivers Association, Inc. v. Swift Transportation Co., Inc. (AZ)*, 632 F.3d 1111, 1115 (9th Cir. 2011), the Ninth Circuit stated that "Congress's substantive purpose in authorizing the Truth-in-Leasing regulations was to protect owner-operators" and that the purpose of the TIL Regulations' disclosure provisions is to "prevent[] carriers from hiding fees . . . and allow[] lessors to make informed decisions."). *See Overton v. Uber Techs., Inc.*, No. 18-cv-2166-EMC, 2018 WL 3707339, at *6 (N.D. Cal. Aug. 3, 2018) ("The purpose of these 'truth-in-leasing regulations [is

to] protect independent truckers from motor carriers' abusive leasing practices.'" (alteration in original) (quoting *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016)). In short, "[t]he aim of the regulations is to compel disclosure of the contract terms . . . , not to govern the terms for which the parties are permitted to bargain . . . ." *Renteria v. K&R Transp., Inc.*, No. 98 CV 290 MRP, 1999 WL 33268638, at *3 (C.D. Cal. Feb. 23, 1999). Thus, "the California Labor Code does not interfere with the objections of the TIL Regulations and is not an obstacle to the accomplishment of their purpose." *Valadez*, 2017 WL 1416883, at *8. Carriers can comply with California laws and at the same time disclose them as required by the TIL Regulations.

CSXIT's assertion of obstacle preemption is predicated on an assumption that the TIL regulations confer substantive authority on carriers and drivers to freely negotiate between themselves the allocation of deductions and business expenses and that such affirmative grant of authority cannot be regulated by state law. But the language of the TIL Regulations do not so state; the language speaks in terms of *disclosure* of those allocations – disclosures which are to be made whether the allocation is the result of negotiations or state statutory mandate. *See, e.g.*, 49 C.F.R. § 376.12(e) ("[T]he lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries," etc.); *id.* § 376.12(j)(1) ("[T]he lease shall specify the amount [paid into insurance connected to the operation of the leased equipment] which will be charged-back to the lessor.").

There is no indication in the Regulations, and their authorizing statute, *see* 49 U.S.C. § 14101, *et seq.*, or in the purpose statement of the agency that issued the regulations, *see* 129 M.C.C. 700, 700, that the TIL Regulations require anything more than disclosure.

That the TIL Regulations are not inconsistent with state labor laws is demonstrated by the fact that the issuing agency specifically wrote the TIL Regulations to accommodate state requirements. For example, in discussing the disclosure requirement regarding chargebacks, *see* 49 C.F.R. § 376.12(h), the agency noted that "[p]arties filing comments have pointed out that State laws can significantly affect what and how much is charged back." Lease and Interchange of Vehicles, 47 FR 51136-02, 51139. If lease agreements were required to disclose exactly how much would be charged back, lease agreements would have to be frequently revised, because state

6

laws change frequently. *See id.* Because of this and other concerns, the agency decided that "rather than require carriers to state with specificity the amount of charge-backs, we should, instead, require that the lease contain the charge-back items, together with a recitation as to how the amount of each item is computed." *Id.* That resulted in the current chargeback provision, which states: "The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." 49 C.F.R. § 376.12(h). Nothing suggests the agency intended that substantive laws state regarding chargebacks to be preempted. Instead, it wrote the TIL Regulations to accommodate those requirements.

CSXIT's reliance on cases to the contrary is not persuasive. In *Valadez*, involving essentially the same facts and claims as in this case, CSXIT argued that the TIL Regulations preempted the state laws under conflict preemption. 2017 WL 1416883, at *7. *Valadez* determined that obstacle preemption did not apply because the state laws did not frustrate the TIL Regulations' purpose. *Id.* at *8. But *Valadez* did conclude that conflict preemption may still lie under either "direct preemption" (another name for impossibility preemption) or permission preemption – *i.e.*, "preemption of state laws that prohibit what federal law permits." *Id.* at *9 (holding that, in addition to obstacle and impossibility preemption, "Plaintiffs' claims are also preempted if the California Labor Code prohibits activities that the TIL Regulations permit"). *Valadez* construes the TIL Regulations to affirmatively permit the parties to allocate the challenged expenses to the drivers. To the extent *Valadez* so holds, this Court respectfully disagrees. The TIL Regulations do not bar states from substantively prescribing that allocation; they only require that whatever it is or however it is determined, it must be specified in the lease.

For similar reasons, the Government does not find persuasive *Remington v. J.B. Hunt Transp., Inc.*, No. CV 15-100100 RGS, 2016 WL 4975194 (D. Mass. Sept. 16, 2016). In *Remington*, owner-operator truck drivers sued a carrier for improperly classifying them as independent contractors and improperly deducting expenses such as insurance and cargo loss and damage from the drivers' pay. *Remington*, 2016 WL 4975194, at *1. The carrier in *Remington*

7

argued that the TIL Regulations preempted the complaint. The court agreed, holding that the TIL Regulations "provides the freedom to negotiate," *id.* at \*5, and "[w]hat is explicitly permitted by federal regulations cannot be forbidden by state law." *Id.* at \*4. Instead, their purpose is to protect drivers through mandated disclosures.[5]

In *Rodriguez v. RWA Trucking Co., Inc.*, 239 Cal. App. 4th 1375 (2013), *as modified* (Sept. 20, 2013), also cited by CSXIT, a truck driver brought a UCL suit against his trucking company for charging back the cost of insurance to its drivers. The driver alleged that the company thereby violated state laws requiring a license to "transact" in insurance. *See id.* at 1381. The company argued that the TIL Regulations preempted the state laws. The court agreed, finding that "plaintiffs' interpretation of California law . . . would prohibit precisely the kind of chargebacks that federal law permits." *Id.* In addition, "there is no indication here that Congress intended to subject the rights granted by federal regulation to state or local restriction." *Id.* (citing *Parks v. MBNA America Bank, N.A.*, 54 Cal. 4th 376, 387 (2012)). And if carriers were required to comply with the state laws, that would "significantly impair the exercise of authority" granted by the TIL Regulation. *Id.* (quoting *Parks*, 54 Cal. 4th at 388). Therefore, *Rodriguez* concluded, the state laws were preempted. *See id.* at 1394.

*Rodriguez* arrived at this conclusion by relying on *Parks v. MBNA America Bank, N.A.*, 54 Cal. 4th 376 (2012). In that case, the California Supreme Court held that the National Bank Act, which provided national banks with "all such incidental powers as shall be necessary to carry on the business of banking," obstacle-preempted a California law prohibiting banks from offering preprinted checks to customers unless they make certain disclosures. *Id.* at 380, 387. As echoed

---

[5] *Verizon New England, Inc. v. Maine Public Utilities Commission*, 509 F.3d 1 (1st Cir. 2007), cited in *Remington* contrasts with the instant case. *Remington* concerned states' and the FCC's competing powers under 47 U.S.C. § 271 to require various telephone carriers to share their infrastructure with competitors at specified rates. The First Circuit held that two state laws requiring carriers to charge lower rates in some circumstances were preempted by the FCC's permission to charge higher prices. Specifically, the laws were preempted under obstacle preemption, because the FCC permitted higher prices "to limit subsidization and to encourage investment by the competitors" – a purpose that lower prices would "undercut." *Verizon*, 509 F.3d at 9. *Verizon* properly invoked obstacle preemption; there was a clear purpose to safeguard higher prices permitted by the FCC. *Verizon* thus contrasts with the TIL regulations at issue since they do not embody any federal substantive policy.

8

by *Rodriguez*, the state law would "'significantly impair[] the exercise of authority' granted to national banks by the NBA," *id.* at 388 (quoting *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007)), particularly if all 50 states enacted "a diverse or duplicative patchwork of local disclosure requirements." *Id.* at 389. In addition, there was "no indication that Congress intended to subject that power [granted by the NBA] to local restriction." *Id.* at 387 (quoting *Barnett Bank v. Nelson*, 517 U.S. 25, 35 (1996)). Critically, however, these conclusions justified preemption only because federal legislation regarding national banks enjoys a much lower bar for preemption. As *Parks* recognized, "the word 'powers' is 'a legal concept that, in the context of national bank legislation has a history. That history is one of interpreting grants of both enumerated and incidental powers to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law.'" *Id.* at 384 (quoting *Barnett Bank*, 517 U.S. at 32). "[W]here Congress has not expressly conditioned the grant of 'power' upon a grant of state permission, the Court has ordinarily found that no such condition applies." *Barnett Bank*, 517 U.S. at 34; *see also id.* at 32 (citing *Easton v. Iowa*, 188 U.S. 220, 229-30 (1903) ("That legislation [creating and regulating national banks] has in view the erection of a system . . . independent . . . of state legislation . . . .")). This reverses the usual presumption against preemption, such that grants of power to national banks preempt contrary state law unless Congress explicitly specifies otherwise or the state law has only an insignificant effect on the national bank's powers. *See Parks*, 54 Cal. 4th at 384-85. Thus, *Rodriguez*'s reliance on *Parks* was misplaced. In the context of the TIL regulations and state laws exercising traditional police powers, the presumption *against* preemption applies.

Moreover, *Valadez* also cites *Owner-Operators Ind. Drivers Ass'n, Inc. v. United Van Lines, LLC*, 556 F.3d 690 (9th Cir. 2009), for the proposition that the TIL Regulations affirmatively permit CSTIX to charge back the cost of insurance to drivers and therefore preempts contrary state law. *Owner-Operator* construed 49 C.F.R. § 376.12(j)(i) (stating, in relevant part, "If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor") as "permit[ting] the carrier to charge back to the driver 'any of this insurance.'" *Owner-Operator*, 556 F.3d at 697. But the

9

dispute in *Owner-Operator* was only about whether "any of this insurance" included personal liability and property damage insurance. *See id.* at 696-97. The court resolved that in the affirmative. Preemption was not at issue. In any event, it is worth noting that § 376.12(j)(i) merely says "if" insurance is charged back to drivers, the award shall be specified in the lease. The regulation does not say such expense *must* be charged back nor does it affirmatively authorize and protect the parties' authority to so decide. Its disclosure mandate is not inconsistent with particular state laws that prohibit such chargebacks; the "if" is merely contemplates that some states might allow such chargebacks while other states do not.[6]

Accordingly, CSXIT's argument based on preemption fails. Neither express, field, or obstacle preemption apply. The TIL regulations do not substantively insulate transportation companies for actions which conflict with California labor laws; it only mandates disclosure.

B.     Cargo and Equipment Loss and Damage, and Insurance

CSXIT asserted preemption as to all six categories of challenged expenses based on the argument that states cannot prohibit what the federal regulations permit. For two categories of expenses under Claim 1 – cargo and equipment loss and damage, as well as insurance – this is CSXIT's only argument. *See* Mot. at 9-12; Docket No. 115 ("Reply") at 9-11. For the reasons stated above, the Court **DENIES** the motion as to Claim 1 based on insurance and cargo and equipment loss and damage.

---

[6] At oral argument, CSXIT cited three Supreme Court cases as supporting what it calls permission preemption. All are inapposite. *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000), involved a case in which the Department of Transportation deliberately rolled out vehicular safety requirements gradually to prevent a backlash against such requirements. These requirements reflected a substantive balance stricken by the government as to what car manufacturers were required and were not required to do. They therefore preempted more stringent state regulations because the state regulations would have frustrated the Department's purpose in a gradual rollout in regulation. In contrast, there is no indication here that the agency or Congress intended to strike a balance giving carriers and owner-operators room to negotiate. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), did not involve preemption at all. The question in that case was only whether the *Chevron* doctrine applied to the FDA's decision to classify tobacco products in a way that would require their complete removal from the marketplace. The Court concluded that Congress had spoken on the issue and created an express policy that tobacco products should remain in the marketplace. An express policy supporting CSXIT's position is absent here. Finally, *Waters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007), is a case involving a national bank, with the concomitant lower standard for preemption, which the Court discussed at length. *See id.* at 10-13. *Waters* is therefore inapposite to the instant case wherein traditional presumption against preemption obtains.

C.  Escrow Costs and Operating Costs

For two of the remaining categories – escrow costs and operating costs – CSXIT also argues traditional obstacle preemption. *See* Mot. at 11-13; Reply at 10-11. Regarding escrow costs, the Leasing Agreements required each driver to maintain an escrow account from which CSXIT could deduct money should the driver fail to fulfill his duties. *See* Mot. at 11. Plaintiffs now seek reimbursement of deducted funds under California Labor Code § 2802. CSXIT argues that the California Labor Code would moot the use of escrow accounts and frustrate the purpose of the TIL Regulations by deterring carriers from entering into leases with owner-operators. It makes a similar argument regarding operating costs.

However, the TIL Regulations do not mandate the use of escrow accounts or for a particular party to bear operating costs. *See* 49 C.F.R. § 376.12. Section 49 C.F.R. § 376.12(k) merely states, "If escrow funds are required, the lease shall specify" a variety of items.

The Court **DENIES** the motion as to Claim 1 as related to these costs.

D.  Vehicle Purchase or Lease Costs and Vehicle Replacement Costs

CSXIT also argues that the regulations preempt any state law that would require it to reimburse plaintiffs for the cost of acquiring the vehicles. CSXIT correctly notes that the TIL Regulations state that leases "shall be made between the authorized carrier and the *owner* of the equipment." *Id.* (quoting 49 C.F.R. § 376.12(a)). Further, the regulations "recognize[] that owner-operators will 'retake[] possession of the equipment upon termination of the lease agreement.'" *Id.* (quoting 49 C.F.R. § 376.12(e)). CSXIT might be understood to argue that, because these provisions contemplate that carriers lease vehicles from owner-operators, it would be "nonsensical" for carriers to pay – in addition to lease payments – the capital cost of acquiring those vehicles. *Id.* The argument has logical force. However, the problem is not preemption. The issue instead is the interpretation and application of the California statute. Under California law, "employers in the pick up and delivery industry in California can require as a condition of employment that their drivers, at their own expense, purchase or lease a truck to the employer's specifications." *Estrada v. FedEx Ground Packaging Sys., Inc.*, 154 Cal. App. 4th 1, 21-24 (2007) (quoting the trial court below) (analyzing a number of interpretive bulletins released by the

11

California Department of Industrial Relations). The court in *Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 899-900 (N.D. Cal. 2016), held that, although insurance, licenses, and permits are reimbursable business expenses under California Labor Code § 2802, the drivers' lease payments are not reimbursable. Where drivers lease their trucks to carriers, as contemplated by the TIL Regulations, carriers cannot be expected to make the lease payments and in addition pay for the cost of the truck's acquisition. That amounts to double compensation – the lease payment already reflects the compensation for use of capital. Carriers cannot be expected to pay acquisition costs plus lease payments any more than a renter can be expected to pay rent plus the owner's mortgage. Section 2802 cannot be construed to require double payment. Plaintiffs therefore have no claim for vehicle-acquisition costs (in addition to lease payments) under California Labor Code § 2802.

Accordingly, the Court **GRANTS** the motion as to vehicle acquisition costs under Claim 1. Because the same reasoning applies to vehicle replacement costs, the Court also **GRANTS** the judgment to CSXIT as to those costs.

E. <u>Claim 2: Preemption and Failure to State a Claim</u>

Plaintiffs bring Claim 2 under California Labor Code § 221 for improper deductions from their final settlements and escrow accounts. These deductions "includ[e] but [are] not limited to" cargo and equipment loss and damage and escrow costs. SAC ¶ 101. Escrow deductions permitted under the lease agreement include a wide variety of categories, such as "the cost of an onboard recording device," citations and fines, adjustments for overpayment, and legally mandated garnishments and levies. Docket No. 110-2, at ECF 7-8.

Section 221 provides that "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." CSXIT asserts both preemption and substantive failure to state a claim. The preemption arguments under Claim 2 are the same as under Claim 1, *see* Mot. at 14-15, and they fail for the same reasons.

Apart from preemption, CSXIT argues that Claim 2 fails on the merits. Focusing on the phrase "theretofore paid," CSXIT argues that § 221 only prohibits post hoc recapture, not deductions made before payment. *See* Mot. at 15. This is incorrect. As Plaintiffs point out, California case law is replete with cases barring pre-payment deductions under § 221. *See Davis*

*v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1330-38 (2016) (discussing cases barring deductions); *cf. Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal. 4th 217, 227 (2007) ("Because the laws authorizing the regulations of wages, hours, and working conditions are remedial in nature, courts construe these provisions liberally, with an eye to promoting the worker protections they were intended to provide.").

CSXIT also argues that the alleged deductions fall within an exemption provided by § 224. Section 224 specifies that "Section[] 221 . . . shall in no way make it unlawful for an employer to withhold or divert any portion of an employee's wages . . . when a deduction is expressly authorized in writing by the employee to cover . . . deductions not amounting to a rebate or deduction from the standard wage arrived at by" collective bargaining, wage agreement, or statute. CSXIT argues that the lease agreements, which apparently permitted such deductions, constitute express authorization in writing sufficient to provide protection under § 224. That is not so.

The latest word from the California courts on the scope of § 224 is *Davis v. Farmers Insurance Exchange*, 245 Cal. App. 4th 1302 (2016). That case involved deductions that Farmers made from the pay of Davis, an employee. The deductions included the costs of the employee's errors and omissions insurance policy and operational expenses, such as computer equipment, marketing materials, stationery, and ads. *See id.* at 1335. Davis had "concede[d] that he agreed to at least some of the deductions," and Farmers moved and was granted directed verdict. *Id.* at 1332. On appeal, however, the court held that the fact that Davis had agreed to some of the deductions was "not dispositive," because employers cannot "'require[] its employees to consent to unlawful deductions from their wages.'" *Id.* (quoting *Hudgins v. Neiman Marcus Grp., Inc.*, 34 Cal. App. 4th 1109, 1124 (1995)). In particular, "business expenses," including expenses that are "inevitable in almost any business operation," must be borne by the company. *Id.* at 1333 (quoting *Kerr's Catering Serv. v. Dep't of Indus. Relations*, 57 Cal. 2d 319, 325 (1962)). This is so even where "the [employees] had executed written contracts agreeing to [a] method of salary calculation" that deducts business expenses from wages. *Id.* (citing *Quillian v. Lion Oil Co.*, 96 Ca. App. 3d 156, 159-60 (1979)); *see also Lindell v. Synthes USA*, 155 F. Supp. 3d 1068, 1087 (N.D. Cal. 2016) ("Because Defendants' policy necessarily deducted money from employees'

wages for business losses, it could not comply with California law even if Class members agreed to such a condition in writing."); *Aguilar v. Zep Inc.*, No. 13-cv-0563-WHO, 2014 WL 4245988, at *16 (N.D. Cal. Aug. 27, 2014) ("[R]outine business expenses" cannot be deducted from employee pay, and "[t]he fact that the [employees] consented to the practice is irrelevant."). Instead, any deductions must be "for the benefit of the employee, not the employer." *City of Oakland v. Hassey*, 163 Cal. App. 4th 1477, 1501 (2008); *accord Davis*, 245 Cal. App. 4th at 1334 (In addition to normal business expenses, "California law also prohibits other types of wage deductions taken for the sole benefit of the employer.").

In *Davis*, because California employers are required to indemnify employees for conduct arising out of their employment, Davis's errors and omissions policy was "for the benefit of Farmers" and could not be deducted. *Davis*, 245 Cal. App. 4th at 1336. So too with standard business expenses. *See id.* at 1336. The employee's claims therefore survived directed verdict.

The costs here associated with cargo and equipment loss and damage are similar. As the California Supreme Court recognized in *Kerr's Catering*, "some . . . breakage and loss of equipment are inevitable in almost any business operation." 57 Cal. 2d at 329. Thus, these costs "should be borne as a 'business expense,'" not deducted. *Davis*, 245 Cal. App. 4th at 1333 (quoting *Kerr's Catering*, 57 Cal. 2d at 329).

Escrow deductions are more complex. The lease agreements required Plaintiffs to deposit funds into an escrow account held by CSXIT from which CSXIT would be able to make deductions. *See* Docket No. 110-2, at ECF 8. Deductions permitted by the agreements include some of the categories already discussed, such as cargo or equipment loss or damage, "the cost of an onboard recording device," and "[c]harges made to Contractor assigned fuel cards." *Id.* at ECF 7. These are likely ordinary business expenses that should not be deducted. But other permitted deductions include citations and fines, adjustments for overpayment, legally mandated garnishments and levies, and many other categories. *See id.* At least some of these deductions might be permitted by § 224. The parties, however, do not address these categories, arguing only generally about "deductions . . . from the escrow accounts." Mot. at 16; *see also* Docket No. 112 ("Opp.") at 23 (mentioning only "contributions to escrow accounts"). At this stage, it is more

14

sensible to permit the facts to develop, particularly since some deduction categories appear to be ordinary business expenses.

Because Claim 2 alleges the deductions of ordinary business expenses, § 224 does not shield CSXIT from liability under § 221. The Court **DENIES** CSXIT's motion as to Claim 2 without prejudice to further refinement in future motions or adjudication.

F.  Claims 3, 4, and 5: Preemption

Claims 3, 4, and 5 are for Plaintiffs' denied meal breaks, rest breaks, and minimum wages, respectively, due to their alleged misclassification as independent contractors instead of employees.

The minimum-wage claim is based on uncompensated time expended by drivers waiting for assignments, performing inspections, or waiting to be released from a job. SAC ¶ 114. CSXIT argues that this claim is preempted by § 376.12(d) and (e) of the TIL Regulations. Section 376.12(d) provides in relevant part:

> The amount to be paid by the authorized carrier . . . shall be clearly stated on the face of the lease or in an addendum . . . . The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease.

CSXIT argues that this provision permits carriers and drivers "freedom to negotiate the terms of compensation" and therefore preempts state minimum-wage laws as well as laws requiring meal and rest breaks. Mot. at 17. CSXIT's arguments regarding § 376.12(d) fail for the reasons stated in *Valadez*. *See* 2017 WL 1416883, at *13. As *Valadez* observed, § 376.12(d) pertains merely to the method of calculating wages, and state law mandates no particular method. *See id.* Rather, "[t]he Labor Code simply requires that, once an employee's regular rate of pay is calculated, it not be lower than the minimum wage." *Id.* "The TIL Regulations are silent as to minimum hourly rate of compensation, and required meal and rest breaks, and thus these claims are not preempted." *Id.* It is possible to comply with California wage laws and § 376.12(d), and California wage laws obstruct no discernible federal objective embodied in § 376.12(d).

CSXIT also argues that § 376.12(e) of the TIL Regulations preempts claims for the

drivers' uncompensated waiting time. Section 376.12(e) requires the lease to specify "detention and accessorial services . . . and the compensation, if any, to be paid for this service." Arguing that waiting time qualifies as "detention services," CSXIT contends that the phrase "if any" makes compensation for waiting time optional. Again, CSXIT argues that the TIL Regulations permit its arrangements and therefore preempt contrary state laws. These arguments fail for the same reason they fail for Claim 1. The TIL Regulations do not confer a substantive zone of substantive conduct immunized from state regulation.

For these reasons, the Court **DENIES** CSXIT's motion as to Claims 3, 4, and 5.

G. Claim 7

Plaintiffs bring Claim 7 under the UCL based on the violations undergirding Claims 1-6. CSXIT argues that Claim 7 therefore rises and falls with the preceding claims. Plaintiffs agree. Because the Court denies CSXIT's motion as to Claims 1-6, it also **DENIES** the motion as to Claim 7, except that the motion is **GRANTED** insofar as Claim 7 is premised on vehicle purchase, lease, or replacement costs.

## V. CONCLUSION

For the foregoing reasons, the Court **DISMISSES** claims based on vehicle purchase and replacement costs. The motion is otherwise **DENIED**. As previously discussed, this order applies to the Third Amended Complaint.

This order disposes of Docket No. 110.

**IT IS SO ORDERED**.

Dated: September 25, 2018

_____
EDWARD M. CHEN
United States District Judge